RECEIVED
JUN 01 2018
AT 8:00_____M
WILLIAM T. WALSH
CLERK

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARISE BEAUVIL and JEAN BEAUVIL,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ASBURY PARK, ROBERT MCKEON, ADAN MAGANA, and JOHN DOE CODE ENFORCEMENT OFFICIALS,<br><br>Defendants. | Civ. No. 18-991<br><br><br>OPINION |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a motion to dismiss brought by Defendants City of Asbury Park, Adan Magana, and Robert McKeon (collectively, "Defendants"). (ECF No. 6.) Plaintiffs Marise and Jean Beauvil oppose. (ECF No. 8.) The Court has decided the Motion after considering the parties' written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

This civil rights action arises out of the following allegations. Plaintiffs Marise and Jean Beauvil, who are married, are Black Haitian-Americans with dual citizenship who reside in Ocean, NJ. (Compl. ¶¶ 1–2, 10, ECF No. 1.) Marise Beauvil owns property located at 1117 Sunset Avenue, Asbury Park, NJ, which consists of four apartments (the "Sunset Avenue property"). (*Id.* ¶ 9.) Jean Beauvil has an equitable interest in the property as Marise Beauvil's spouse. (*Id.* ¶ 10.) Defendant City of Asbury Park ("Asbury Park") is a municipality in New

1

Jersey. (*Id.* ¶ 3.) Defendant Robert M. McKeon ("Defendant McKeon") is the Director of Property Improvement and Neighborhood Preservation for Asbury Park (*id.* ¶ 4), and Defendant Adan Magana ("Defendant Magana") is a Code Enforcement Officer for Asbury Park (*id.* ¶ 5). The Sunset Avenue property is subject to Asbury Park's Code Enforcement Rules and Regulations. (*Id.* ¶ 11.)

On or about April 15, 2016, Defendant Magana issued a notice of violation and order to correct identification to Mr. Beauvil for the Sunset Avenue property. (*Id.* ¶ 12.) The notice required compliance by April 21, 2016. (*Id.*) On or about April 16, 2016, a red notice was placed on the door of the Sunset Avenue property by Defendant McKeon stating, in part, "THIS UNIT IS UNINHABITABLE and its Use or Occupancy has been PROHIBITED and it shall be unlawful for any person to occupy these premises without written permission from the Hearing Officer of the City of Asbury Park. All occupants and contents of this building must be removed by 4/18/16." (*Id.* ¶ 13.) Mr. Beauvil had a Certificate of Occupancy for the Sunset Avenue property at the time the notice was issued. (*Id.* ¶ 14.) Later that afternoon, Defendant McKeon returned to the Sunset Avenue property and, in Jean Beauvil's presence, called Marise Beauvil a "slum landlord" and a "fucking Haitian nigger." (*Id.* ¶ 15.)

Plaintiffs aver that these notices were placed on Mr. Beauvil's property without a hearing, violating Plaintiffs' rights to both procedural and substantive due process secured by the Fourteenth Amendment to the U.S. Constitution. (*Id.* ¶ 16.) Further, Plaintiffs allege that Defendants' conduct evidences racial discrimination and is part of a pattern and practice to force the sale of properties like the one owned by Plaintiff as Asbury Park gentrifies, violating Plaintiffs' rights to equal protection. (*Id.* ¶¶ 17–18.)

Plaintiffs filed their Complaint on January 24, 2018, bringing claims against all Defendants under 42 U.S.C. §§ 1983, 1985, and 1988 (*id.* ¶¶ 19–21) and the New Jersey Civil Rights Act ("NJCRA") (*id.* ¶¶ 22–24). Instead of setting out each cause of action as its own count, Plaintiffs plead all of their federal claims as Count One and their state NJCRA claim as Count Two. (*See generally id.*) By stipulation and order, Defendants' time to respond was extended to March 31, 2018. (ECF Nos. 4, 5.) Defendants filed the instant motion to dismiss on April 2, 2018. (ECF No. 6.)[1] On April 10, 2018, Plaintiffs submitted a letter pursuant to Local Civil Rule 7.1(d)(5), adjourning the Motion by one cycle to May 21, 2018. (ECF No. 7.) Plaintiffs timely filed opposition on May 7, 2018. (ECF No. 8.) Defendants then made an untimely request to adjourn the Motion one additional cycle to June 4, which the Court granted in its discretion. (*See* ECF Nos. 9, 10.) Defendants were given until May 29, 2018 to reply, but submitted an untimely reply on May 31, 2018. The Court now considers the Motion.

## **LEGAL STANDARD**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part

---

[1] The Court considers this late-filed Motion and construes the Motion to be submitted on behalf of all three Defendants—all represented by the same counsel—based on notations on the docket and certain portions of the supporting brief. (*See* Docket Entry at ECF No. 6; *see also* Defs.' Br. at 10–12, 17, ECF No. 6-1.) However, the filings lack clarity, repeatedly suggesting that only Defendant Asbury Park has moved to dismiss. (*See, e.g.*, Defs.' Br. at 6 ("Defendant City of Asbury Park (hereinafter referred to as 'City'), moves to dismiss the Plaintiffs' Complaint, in lieu of filing Answer . . . ."); *see also id.* at 1, 16 (using singular "Defendant" instead of plural "Defendants"); *id.* at 18 (erroneously describing the motion as "Defendant Cedar Grove's motion to dismiss"); *see also* Defs.' Proposed Order, ECF No. 6-2 (proposing that the Court grant the motion dismiss brought by "Defendant, Township of Asbury Park[]" and dismiss "all claims against the Defendants City of Asbury Park, Robert M. McKeon, and Adan Magana").)

3

analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The Court may consider "matters incorporated by reference or integral to the claims, matters of which the Court may take judicial notice, matters of public record, orders, and other items of record in the case." *Blue Sky 1, LLC v. Jaguar Land Rover N. Am., LLC*, 2016 WL 6803081, at *4 (D.N.J. Nov. 16, 2016).

## ANALYSIS

Defendants make the following arguments in support of dismissal of the federal causes of action: (1) Plaintiffs have not pled sufficient facts to establish municipal *Monell* liability under 42 U.S.C. § 1983 against Asbury Park; (2) Plaintiffs fail to state a claim for civil conspiracy under § 1985; and (3) Plaintiffs fail to state a claim for attorney's fees under § 1988 because they

4

cannot state a claim under one of the predicate causes of action, here § 1983 or § 1985. (*See* Defs.' Br. at 10–15, ECF No. 6-1.) Defendants reprise the same arguments in moving to dismiss Plaintiffs' NJCRA claims based on the New Jersey State Constitution. (*Id.* at 16.) Finally, Defendants argue that Plaintiffs' "claim for Deprivation [sic] of property" fails. (*Id.*) Plaintiffs respond that each Count of the Complaint does state a claim, but if the Court finds any Count fails, the Court should permit Plaintiffs leave to amend their Complaint. (*See generally* Pls.' Br., ECF No. 8.)

I. Count One: Fourteenth Amendment Claims Under §§ 1983, 1985, and 1988

A. **42 U.S.C. § 1983: Individual Liability**

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Harley v. City of New Jersey City*, 2017 WL 2779466, at *9 (D.N.J. June 27, 2017) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)). Defendants' arguments in support of dismissal are keyed toward failure to state a claim against Defendant Asbury Park, not Defendants McKeon or Magana in their individual or official capacities. (*See, e.g.*, Defs.' Br. at 11–14.)[2] However, in addition to disputing municipal liability, explored below, Defendants generally contest Plaintiffs' "deprivation of property" claim as it relates to both Counts I and II, and presumably as asserted against all Defendants. (Defs.' Br. at 16–18.)

Plaintiffs have pled three separate Fourteenth Amendment violations to support their § 1983 claims for deprivation of constitutional rights by an official acting under color of law:

---

[2] In reply, Defendants newly contest the *Monell* claim as applied to the individual defendants. (*See* Defs.' Reply at 3–4, ECF No. 11.) First, this argument is unmoored from precedent; a § 1983 claim can proceed against individual state actors in their individual capacities separate and apart from *Monell*. Second, because Defendants did not appear to contest the liability of the individual named Defendants in their original moving brief, the Court will not engage in a robust Rule 12(b)(6) analysis of all claims against Defendants McKeon and Magana.

5

procedural due process, substantive due process, and equal protection of law. (Compl. ¶¶ 16, 20.) As an initial matter, Plaintiffs' factual allegations that Defendants' code violation and condemnation notices deprived them of the functional use of their rental property implicate both substantive and procedural due process. *See, e.g., Andrews v. Borough of Collingdale*, 329 F. App'x 373, 374 (3d Cir. 2009) (per curiam) (noting that homeowner-plaintiffs alleged a violation of "their Fourteenth Amendment right to substantive due process by denying them the full use and enjoyment of their property"); *DeRaffele v. City of Williamsport*, 2016 WL 11200711, at *3 (M.D. Pa. Oct. 3, 2016) ("Contending that the condemnation of [the property] was done without prior notice and a hearing and that post-deprivations procedures were inadequate to protect [their] property interest, [the plaintiffs] present[] a procedural due process claim."), *report and recommendation adopted*, 2018 WL 2086074 (M.D. Pa. May 4, 2018). The Court construes Defendants' arguments as contesting Plaintiffs' procedural and substantive due process claims.

"To state a procedural due process claim, [a plaintiff] must establish (1) that it was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty and property, and (2) that the procedures available to it did not provide due process of law." *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013). Plaintiffs' ownership of the Sunset Avenue property is undisputedly a protected property interest within the meaning of the Fourteenth Amendment. (*See* Defs.' Br. at 16–17 (not contesting Plaintiffs' protected property interest).) "Thus, the question is whether [Plaintiffs were] provided with the process [they were] due," *DeRaffele*, 2016 WL 11200711, at *6, *i.e.*, given sufficient notice and opportunity to be heard before the property was condemned.

Courts must balance three factors to determine whether the procedural protections were sufficient: (1) the private interest at stake; (2) the risk of erroneous deprivation of that interest

through the procedures used and the probable value of different procedures; and (3) the government's interest. *See, e.g., Nat'l Amusements Inc.*, 716 F.3d at 62 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 238 (3d Cir. 2013). Plaintiffs allege that Defendant McKeon issued a red notice before the original violation notice was set to expire, condemning the property before Plaintiffs had an opportunity to contest or remediate the issues cited by Defendant Magana. (*See* Compl. ¶¶ 12–16; *see also* Pls.' Ex. A, ECF No. 8-1 (noting code violations including walls in disrepair, front porch wood rot, electrical problems, broken refrigerator, and mice and roaches, issued by Defendant Magana on April 15 and giving compliance date of April 21); Pls.' Ex. B, ECF No. 8-2 (declaring premises uninhabitable and requiring all occupants and contents of the building be removed by April 18).) Though these allegations concerning the procedures provided are short on details, they surmount the federal pleading standard for a procedural due process violation.[3]

Turning next to substantive due process, "official misconduct that deprives one of a property interest may rise to the level of a substantive due process violation in limited instances, as when a government body's actions are motivated by racial animus or political or personal bias . . . ." *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 575 (N.J. 1996) (citing *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 (1st Cir. 1982)). Plaintiffs have alleged that Defendants effected a deprivation of property due to some combination of racial animus, hostility toward Plaintiffs' national origin, and/or personal bias. Accordingly, Plaintiffs have sufficiently alleged their substantive due process violation to survive Defendants' Motion to Dismiss. Defendants' Motion to Dismiss is denied with respect to "deprivation of property."

---

[3] Defendants' new arguments in reply concerning the adequacy of the procedural protections provided are of no moment, as they are not responsive to the factual allegations in Plaintiffs' Complaint concerning competing compliance deadlines. (*See* Defs.' Reply at 5–6.)

## B. 42 U.S.C. § 1983: Municipal Liability

"A local government may be sued under § 1983 only for acts implementing an official policy, practice or custom." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978)); *see also Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). A claim asserting municipal liability under 42 U.S.C. § 1983 is generally referred to as a *Monell* claim. *See, e.g., Harley*, 2017 WL 2779466, at *7; *Jutrowski v. Twp. of Riverdale*, 2017 WL 1395484, at *6 (D.N.J. Apr. 17, 2017). *Monell* provides that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691; *id.* at 694. Rather, liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). In sum, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

A plaintiff may show a policy for *Monell* purposes "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Bielevicz*, 915 F.2d at 850 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)); *Watson*, 478 F.3d at 155. A plaintiff may show custom for *Monell* purposes through "a given course of conduct, although not specifically endorsed or authorized by law, [that] is so well-settled and permanent as virtually to constitute law." *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1480); *Watson*, 478 F.3d at 155–56. "To plausibly plead *Monell* liability, '[a] plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy

8

and the injury suffered.'" *Harley*, 2017 WL 2779466, at *7–8 (quoting *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985)).

Plaintiffs' Complaint avers that "Asbury Park is a 'person' within the meaning of 42 U.S.C. § 1983 and at all times relevant herein was operating pursuant to a policy and practice or custom or usage and acting under the color of State Law." (*Id.* ¶ 3.) This language contains legal conclusions the Court may disregard at this stage; by design, this language tracks the legal elements of a § 1983 municipal liability *Monell* claim and does not allege any official policy or custom of Asbury Park. However, Plaintiffs also plead that "Asbury Park has been undergoing significant gentrification and as part of that process, Defendants have engaged in discriminatory practices in an effort to force the sale of properties such as the one owned by Plaintiff." (Compl. ¶ 17; *see also id.* ¶ 18 (alleging Plaintiffs were treated differently than other similarly situated landowners due to racial discrimination).)

Even accepting these factual averments as true and viewing the Complaint in the light most favorable to Plaintiffs, "Plaintiff[s] do[] not specifically describe an official policy that violates the law, nor do[] [they] allege a proper causal link between any policy of Defendants and the alleged harm." *Harley*, 2017 WL 2779466, at *8; *see also Andrews*, 329 F. App'x at 374 (affirming district court's judgment in favor of defendants in action brought by African-American homeowners who alleged racially discriminatory selective code enforcement by borough and borough officials arising out of citations against rental property they owned). Plaintiffs' vague allusion to "discriminatory practices" asks the Court to make a number of inferential leaps to find an official custom based on Asbury Park "undergoing significant gentrification." (Compl. ¶ 17.) Plaintiffs imply that the city, "as part of that process" of gentrification, has an official custom of targeting racial minority property owners and/or property

owners of Haitian descent, presumably with unwarranted code violations, in order to get them to sell their properties, presumably to new residents of higher socioeconomic status, thereby contributing to gentrification. (*Compare* Pls.' Br. at 3 (describing Defendants' use of code enforcement violations to target Haitians to force the sale of properties), *with* Compl. ¶¶ 17–18 (alleging racially "discriminatory practices . . . to force the sale of properties").) This broad, speculative language requires the Court to do more than accept concrete factual allegations as true to find a plausible violation and therefore does not meet the federal pleading standard.

In the alternative, to the extent that Plaintiffs invite the Court to infer a pattern or practice of discrimination from the single incident described in their Complaint, that similarly does not meet the federal pleading standard to establish custom or policy for the *Monell* claim. *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) ("[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker." (citation omitted)). Plaintiffs allege that on April 15, 2016, Defendant Magana issued a violation notice giving a compliance deadline of April 21, 2016 (*see* Pls.' Ex. A, ECF No. 8-1); that Defendant McKeon issued a red notice the very next day on April 16, 2016, declaring the property uninhabitable without notice or opportunity to be heard (*see* Pls.' Ex. B, ECF No. 8-2); and that Defendant McKeon used an expletive and racial slur, invoking Plaintiffs' Haitian nationality, to disparage Mr. Beauvil. This series of events cannot alone establish a custom or policy. *Cf. Shahid v. Borough of Eddystone*, 2011 WL 4573521, at *3 (E.D. Pa. Oct. 3, 2011) ("Viewing the complaint in the light most favorable to the plaintiff, we conclude that Shahid is pleading municipal liability under the 'custom' theory. He alleges that *various Eddystone officials informed him repeatedly* that the Borough did not want a

landlord of Bangladeshi origin to own property in what they considered to be a white area. Although this statement is short on details, it pleads sufficiently that Shahid was harmed by an informal but pervasive Borough policy of discouraging non-white people from living in or owning rental property in a white area." (emphasis added)). Accordingly, Plaintiffs' *Monell* claim against Defendant Asbury Park in Count One is dismissed.

The Third Circuit has instructed that where a complaint is vulnerable to Rule 12(b)(6) dismissal "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Plaintiffs have specifically requested the opportunity to amend. (Pls.' Br. at 6.) The Court does not find that it would be inequitable or futile to grant Plaintiffs leave to amend their Complaint, and as a result will do so. The Court dismisses the *Monell* claim against Defendant Asbury Park in Count I of the Complaint without prejudice and grants Plaintiffs leave to amend.

### C.  42 U.S.C. § 1985: Civil Conspiracy

To sufficiently plead a § 1985(3) conspiracy claim, a complaint must contain facts that plausibly allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) injury to a Plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen.

*McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Section 1985(3) actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). In addition, a claim for conspiracy "must . . . contain supportive factual allegations." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J.

11

2009) (quoting *Rose v. Bartle*, 871 F.2d 331, 336 (3d Cir. 1989)). "Mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss." *Harley*, 2017 WL 2779466, at *11 (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002)).

Plaintiffs suggest that their conclusory allegations about the existence of a custom or policy to deprive minority homeowners of their properties through a city-supported or city-orchestrated process of gentrification should be read by the Court to equally allege a conspiracy to deprive Plaintiffs of their constitutional rights. (Pls.' Br. at 4–5.) These allegations are not sufficient to plead a conspiracy claim—indeed, Plaintiffs do not allege that Defendants Magana and McKeon were even working in concert in issuing their distinct notices. Because Plaintiffs do "not address the necessary elements with sufficient factual particularity[,]" *Harley*, 2017 WL 2779466, at *12, the § 1985 claim in Count I is dismissed without prejudice. However, again finding that it would not be inequitable or futile to grant Plaintiffs leave to amend their Complaint, Plaintiffs may amend to include additional factual allegations to support their conspiracy claim against all Defendants.

### D. 42 U.S.C. § 1988

Defendants correctly argue that 42 U.S.C. § 1988 "is not a cognizable claim, but a provision for attorney's fees in actions enforcing provisions of . . . other . . . federal laws[.]" (Defs.' Br. at 15); *see generally* 42 U.S.C. § 1988(b). Because Plaintiffs have been granted leave to amend the predicate § 1983 and § 1985 claims which, if established, would support the § 1988 attorney's fees, the Court need not further address this claim. Plaintiffs need not make additional factual allegations with respect to this statutory provision in Count I.

II. Count Two: NJCRA Claims

Much like the federal constitutional claims brought through the vehicle of § 1983, the NJCRA creates a private right of action against a "person acting under color of law" for violations of the New Jersey Constitution. N.J.S.A. 10:6-2; *see, e.g.*, *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (per curiam) ("The NJCRA is interpreted as analogous to § 1983."); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) ("The [NJCRA] was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[]."). Accordingly, the Court's above analysis of the claims brought via § 1983 applies with equal force in the NJCRA context and requires no further explanation. Therefore, Count II is dismissed with regard to Defendant Asbury Park, *see* Part I *supra*, and Plaintiffs are given leave to amend.

The Court notes that, while the equal protection and substantive due process claims may proceed via the NJCRA, a claim for procedural due process violations may only be brought pursuant to § 1983. *See Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381, 390 (D.N.J. 2015) ("[A] procedural due process claim cannot be brought under the NJCRA." (quoting *Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 405 (D.N.J. 2011))), *aff'd*, 653 F. App'x 145 (3d Cir. 2016). If Plaintiffs submit an amended complaint, it cannot reflect a state constitutional procedural due process claim.

## CONCLUSION

For the reasons stated herein, Defendants' Motion is granted in part and denied in part. Plaintiffs will be granted leave to amend. An appropriate order will follow.

Date: 6/1/18

ANNE E. THOMPSON, U.S.D.J.

13